IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 19-0848-WS-M ) |
| NEW WAY OUT, CORPORATION, et al., | ) ) ) |
| Defendants. | ) |

ORDER

This matter is before the Court on a motion to dismiss filed by the plaintiff. (Doc. 33). The defendants have filed a response, (Doc. 35), the plaintiff a reply, (Doc. 36), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted.

BACKGROUND

According to the complaint, (Doc. 1), the defendants are a provider of residential services to special needs customers ("New") and three entities that subcontracted with New to provide such services. The plaintiff issued a policy to New as to which the subcontractor defendants were also named insureds.[1] New performed services under contract with a state agency. In February 2019, New lost its certification from the state agency to provide such services due to three incidents of physical abuse by the subcontractors' employees.

The defendants filed a counterclaim, Count Two of which was for "bad faith/failure to investigate" and Count Three of which was for "bad faith/denial of

---

[1] The plaintiff disputes whether one of the three subcontractors is insured under the policy, but the instant motion does not require resolution of that issue.

claim." (Doc. 11 at 4-5). The Court construed these as claims for abnormal and normal bad faith, respectively, and granted the plaintiff's motion to dismiss these counts for failure to allege all the elements of the asserted causes of action. (Doc. 31). The subcontractors filed an amended counterclaim re-asserting Counts Two and Three, (Doc. 32),[2] which is the target of the instant motion to dismiss.

According to the amended counterclaim, New filed claims on the policy on behalf of the subcontractors, which were denied. In May 2019, New then sued the subcontractors ("the underlying lawsuit") for negligence, wantonness, breach of contract, and "alleged murder." The plaintiff appointed lawyers to represent the subcontractors in the underlying lawsuit under a reservation of rights. In July 2019, the parties to the underlying lawsuit reached a settlement. In August 2019, pursuant to that settlement, each of the subcontractors made an offer of judgment of $3 million, with the proviso that the judgment be satisfied exclusively from proceeds of the plaintiff's policy. New filed acceptances of the offers of judgment the same day the offers were filed. Days later, Judge Youngpeter entered judgment accordingly, incorporating the restriction that the judgment is payable exclusively from insurance proceeds. (Doc. 32 at 2-5, 7; Doc. 32-6 at 4). Each settlement agreement provided that, upon entry of judgment, New released each subcontractor from any claim or demand whatsoever, for any damage of any kind whatsoever, related to the underlying action. (Doc. 32-7 at 3; Doc. 32-8 at 3; Doc. 32-9 at 3-4).[3] The complaint seeks a declaration that no coverage exists for the claims New asserted in the underlying lawsuit and that the plaintiff is not liable to New for the agreed judgment entered in the underlying lawsuit. (Doc. 1 at 2, 12).

---

[2] The filing violates Civil Local Rule 15(a), which requires that any amendment to a pleading "must reproduce the entire pleading as amended."

[3] The Court may consider these documents, as well as the policy and the consent judgment, without converting the plaintiff's motion into one for summary judgment, because they are attached as exhibits to the amended counterclaim. *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

According to the amended counterclaim, the lawyers appointed by the plaintiff to represent the subcontractors advised them to make the offers of judgment. Having done so, the plaintiff "now seeks to abandon the terms of the Settlement" by failing to offer New the policy limits. Such a failure to pay by the plaintiff would "void the Settlement Release and subject the Named Insureds to the excess verdict [sic]." (Doc. 32 at 5-6).

Count Two of the amended counterclaim is styled as a claim for "bad faith/failure to investigate/settle." Count Two references the "enhanced obligation of good faith" resting on an insurer that defends its insureds under a reservation of rights, which obligations include a duty to investigate, but it alleges no breach of that duty.[4] Instead, Count Two alleges that, because the subcontractors' liability was so clear and the damages so catastrophic, the plaintiff had a duty to offer policy limits to New in exchange for a release of New's claims against the subcontractors. The plaintiff's failure to do so, both before and after the agreed judgment was entered, constituted a bad faith failure to settle. (Doc. 32 at 7-9).

Count Three is styled as a claim for "abnormal bad faith." Count Three alleges that the plaintiff denied the subcontractors' "request that the terms of [the] Settlement in question be satisfied" and that the plaintiff had no debatable reason

---

[4] The only duties identified by Count Two both as being owed to the subcontractors and as having been breached by the plaintiff are those "to initiate negotiations and to offer its policy limits to settle the claims against" the subcontractors. (Doc. 32 at 7-8). The defendants' insistence that the subcontractors are "seeking bad faith claims under the Normal First Party Failure to Investigate," (Doc. 35 at 7), does not change the fact that Count Two does not articulate any such claim.

The Court also notes that "claims alleging a breach of the enhanced duty of good faith are contract claims." *Twin City Fire Insurance Co. v. Colonial Life & Accident Insurance Co.*, 839 So. 2d 614, 617 (Ala. 2002). The amended counterclaim is expressly limited to "the tort of bad faith," (Doc. 32 at 1), excluding the possibility of a contract claim for failure to investigate in breach of the enhanced obligation of good faith. Nor would it be permissible to cram two claims within a single count. *E.g., Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011) (en banc) ("Plaintiffs' complaint is a 'shotgun' pleading in that it lumps multiple claims together in one count ….").

for this denial, since the counsel it appointed to represent the subcontractors in the underlying lawsuit all advised giving an offer of judgment.  In addition, the entry of judgment legally obligated the plaintiff to pay "those damages for which there is coverage in the policy."  The plaintiff exhibited bad faith by failing to investigate the claims against the subcontractors, by not paying a judgment its appointed counsel recommended, and by filing this declaratory judgment action.  (Doc. 32 at 10).

The plaintiff argues that the amended counterclaim does not plead bad faith with the plausibility demanded by Rule 8(a)(2) as construed by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The plaintiff further argues that the amended counterclaim alleges no recoverable damages attributable to the plaintiff's alleged bad faith.  For both reasons, the plaintiff argues that Counts Two and Three of the amended counterclaim fail to state a claim on which relief can be granted.  (Doc. 33 at 2, 13).[5]

---

[5] The defendants argue that the Court should summarily deny the motion to dismiss because it was filed a week after the 14-day deadline set by Federal Rule of Civil Procedure 15(a)(3) and Local Civil Rule 15(c).  (Doc. 35 at 1-2).  The plaintiff responds that, because the Court dismissed the original Counts Two and Three, the defendants' repleading of those counts "is not truly an 'amendment'" but is instead a "new … counterclaim" that is thus subject to the 21-day response period of Rule 12(a)(1)(B).  (Doc. 36 at 2-3).

The plaintiff offers no legal authority in support of its novel interpretation of the rules, which the Court declines to adopt.  *See, e.g., Dixon v. Allergan USA, Inc.*, 2015 WL 13777064 at *3 (S.D. Fla. 2015) (applying Rule 15(a)(3) to an amended complaint filed after dismissal of its predecessor).  However, after applying the analysis of *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), the Court does **grant** the plaintiff's embedded motion under Rule 6(b)(1)(B) to extend time.  (Doc. 36 at 3 n.2).  *See also In re: Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1297 (11th Cir. 2003) ("[T]he absence of prejudice to the nonmoving party and to the interest of efficient judicial administration are of primary importance …."); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) (applying *Pioneer* analysis in Rule 6(b) context).

## DISCUSSION

**A. Count Two.**

"[I]t is also well-settled that a bad-faith-failure-to-settle claim does not exist where the insured is subject to no personal loss from a final judgment …." *Federal Insurance Co. v. Travelers Casualty and Surety Co.*, 843 So. 2d 140, 144 (Ala. 2002) (describing *Evans v. Mutual Assurance, Inc.*, 727 So. 2d 66 (Ala. 1999)). In *Evans*, the insured's policy limits were $1 million. The jury returned a verdict for $10 million but, while the resulting judgment was on appeal, the insurer settled with the plaintiff for $5 million. 727 So. 2d at 67. The Alabama Supreme Court held that a cause of action for bad faith failure to settle never "accru[ed]," because the insured "was never subject to a final judgment ordering the payment of money that [the insured] personally – and not his insurer – would have to pay," and the insurer's "paying the settlement absolved [the insured] of any personal liability" prior to the judgment becoming final after appeal. *Id*. at 68. After *Evans*, "an insured will never be able to assert a bad-faith-failure-to-settle claim against an insurer" where the insured is not personally exposed to payment of any part of the judgment. *Federated*, 843 So. 2d at 145.

The plaintiff relies on *Federated*. (Doc. 33 at 9). The defendants do not deny its holding or its applicability, but they argue that the subcontractors are still potentially exposed to payment of the judgment. They do not deny that the settlement agreements, the embedded releases, the accepted offers of judgment, and the judgment itself, all preclude New from seeking to satisfy the judgment from the subcontractors. They insist, however, that New could withdraw from the agreements and pursue the subcontractors for the full amount of the judgment. (Doc. 35 at 8-9). For this proposition, they rely on the following language from the agreements: "Each of the Parties represents and warrants that the individuals signing this Settlement Agreement on their behalf have full authority to do so." (Doc. 32 at 5; Doc. 32-7 at 5; Doc. 32-8 at 4; Doc. 32-9 at 5). According to the

defendants, this language means the subcontractors warranted that the plaintiff authorized the entry of $9 million worth of judgments collectible solely from the plaintiff, which it thereby consented to pay.  If the plaintiff did not so authorize the settlement, "then the agreement is non-binding on New Way Out and New Way Out is free to pursue the Judgment remedies from each Subcontractor Defendant."  (Doc. 35 at 9).

Patently, this is not what the quoted language means.  The "Parties" to each settlement agreement were New, a subcontractor, and the individual owner of the subcontractor.  The subcontractors are all entities, and each owner signed on behalf of his or her respective entity, while the CEO of New executed the agreements on behalf of New.  The quoted language is merely stock verbiage confirming that the individual signing the settlement agreement is authorized by the settling entity (a subcontractor, not the plaintiff) to execute the agreement on behalf of that entity (the subcontractor, not the plaintiff).[6]  The defendants' remarkable suggestion that the quoted provision warrants the plaintiff's approval of a settlement to which the defendants concede it was not a party, (Doc. 35 at 8), is nothing short of untenable.

The defendants submit an affidavit from New's CEO for the proposition that New reserves the right to collect the judgment from the subcontractors if it deems the terms of the settlement agreement to have been breached.  (Doc. 32-11).  The defendants identify no possible basis for such action other than their misguided reliance on the authority clause discussed above.  Nor do they explain how New could with impunity violate the explicit judicial prohibition on

---

[6] *E.g., Teva Pharmaceutical Industries, Ltd. v. United Healthcare Services, Inc.*, 341 F. Supp. 3d 475, 485-86 (E.D. Pa. 2018); *Yoe v. Crescent Sock Co.*, 314 F. Supp. 3d 892, 920 (E.D. Tenn. 2018); *In re: VIZIO, Inc., Consumer Privacy Litigation*, 2019 WL 3818865 at *18 (C.D. Cal. 2019); *Sealey v. Beazley Insurance Company*, 2016 WL 4392624 at *4 (S.D. Miss. 2016); *Lassen Municipal Utility District v. Kinross Gold U.S.A. Inc.*, 2013 WL 924623 at *5 (E.D. Cal. 2013).

collection from the subcontractors as reflected in the judgment, or how such extra-legal action could support a claim for bad faith failure to settle.

In any event, all of the defendants' arguments focus on future "possibility." (Doc. 35 at 8). As noted, under Alabama law a claim for bad faith failure to settle cannot accrue before the insured is subject to a final judgment that the insured will have to pay. Because the subcontractors are not now, and have never been, subject to such a final judgment, no such cause of action has accrued.

### B. Count Three.

Alabama law recognizes two forms of bad faith: "normal" and "abnormal." These are not two torts but a single tort "with different options for proof." *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013). "We have repeatedly held that the tort of bad-faith refusal to pay a claim has four elements – (a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence – with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id*. at 258 (internal quotes omitted). "Thus, for the tort of bad-faith refusal to pay, requirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." *Id*. (internal quotes omitted).

As this Court has noted, "[t]he *Brechbill* decision makes clear that the conditional fifth element is a potential substitute for the fourth element, but not for the third element, which the plaintiff must prove in every case." *Coleman v. Unum Group Corp.*, 207 F. Supp. 3d 1281, 1284 (S.D. Ala. 2016). "Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial …." *Brechbill*, 144 So. 3d at 258. "The existence of an insurer's lawful basis for denying a claim is a *sufficient condition* for defeating a claim that

relies upon the fifth element of the insurer's intentional or reckless failure to investigate." *Id*. (emphasis in original).  Thus, "[a] bad-faith-refusal-to-investigate claim cannot survive where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied." *Id*. at 260.  "[R]*egardless of the imperfections of* [*the insurer's*] *investigation*, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *Id*. at 259 (internal quotes omitted, emphasis in original).  The plaintiff asserts that the absence of a debatable reason is an element of the plaintiff's abnormal bad faith claim, (Doc. 33 at 7), and the defendants do not disagree.

A debatable reason "means an arguable reason, one that is open to dispute or question," and it extends equally to "a matter of fact or law." *Ex parte Simmons*, 791 So. 2d 371, 377-78 (Ala. 2000) (internal quotes omitted). The plaintiff argues that it had a debatable reason not to pay the judgment and, on the record before it, the Court agrees.

As noted, the subcontractors' claim of abnormal bad faith rests on the plaintiff's post-judgment refusal to pay policy limits to New in partial satisfaction of the judgment.  The policy provides that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages …."  (Doc. 32-4 at 74, 112). Because the settlement agreements, the releases, the offers of judgment and the judgment all by their terms preclude payment by the subcontractors, the plaintiff argues that the subcontractors are not "legally obligated to pay" the judgment, so that the plaintiff has no contractual obligation to pay the judgment. (Doc. 33 at 8). The plaintiff cites two decisions indicating that in such circumstances the insured is not "legally obligated to pay" and the insurer is thus not required to pay. *Sharp Realty & Management, LLC v. Capitol Specialty Insurance Corp.*, 2012 WL 2049817 *11 (N.D. Ala. 2012); *Bendall v. White*, 511 F. Supp. 793, 795 (N.D. Ala. 1981).

The defendants do not address the plaintiff's cases or offer any in opposition. Instead, they merely insist that they were "attempt[ing] to bind the policy" by their settlement agreements and that they "feel" the plaintiff's failure to tender policy limits breaches their agreement. (Doc. 35 at 8). The defendants' statement of what they thought they were accomplishing falls woefully short of demonstrating that the plaintiff's debatable reason for not paying policy limits towards the judgment is not truly debatable. Whatever arguments the defendants might have made, and whatever authority they might have cited in opposition to the plaintiff's cases, their cursory response leaves the plaintiff's debatable reason intact.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion to dismiss is **granted**. Counts Two and Three of the amended counterclaim are **dismissed**.

DONE and ORDERED this 2nd day of June, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE