IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0848-WS-M |
| | ) |
| NEW WAY OUT, CORPORATION, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

ORDER

This matter is before the Court on the plaintiff's motion for summary judgment. (Doc. 60). The parties have filed briefs and/or evidentiary materials in support of their respective positions, (Docs. 59, 60, 66, 67), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be denied.

BACKGROUND

According to the complaint, (Doc. 1), the defendants are a provider of residential services to special needs customers ("New") and three entities that subcontracted with New to provide such services ("the Subcontractors"). The plaintiff issued a policy ("the Policy") to New, under which the Subcontractors were also named insureds.[1] New performed services under contract with a state agency. In February 2019, New lost its certification from the state agency to provide such services due to three incidents of physical abuse, with each Subcontractor involved in one of the incidents. New sued the Subcontractors in

---

[1] The plaintiff disputes whether one of the Subcontractors is insured under the policy, but the instant motion does not require resolution of that issue.

state court, alleging that it lost its certification due to the Subcontractors' conduct. New asserted various claims against the Subcontractors and demanded indemnity for the damages it suffered as a result of its decertification.[2]

New provided defense counsel to the Subcontractors under a reservation of rights. After the Subcontractors answered, New demanded $3 million from each to settle, to be accomplished by an offer of judgment in that amount conditioned on New's promise to pursue collection exclusively from Policy proceeds.[3]  The Subcontractors made such offers of judgment, New accepted them, and final judgment was entered accordingly.  The plaintiff did not at any time consent to the settlement.

The plaintiff seeks a declaration, on various grounds, that it is not liable to New for the final judgment entered in the underlying lawsuit.  Only two of those grounds are made the basis of the plaintiff's motion for summary judgment.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id*.

---

[2] The plaintiff explains that New, though the named insured under the Policy, was a claimant rather than the insured with respect to its claims arising from the Subcontractors' conduct.  (Doc. 60 at 5).

[3] The parties appear to disagree as to what policy limits are, but they are at least $1 million for each of the three incidents.

"Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003).  "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version."  *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

   "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).  The Court accordingly limits its review to those arguments the parties have expressly advanced.

### I.  "Legally Obligated to Pay."

   New executed a separate settlement agreement with each Subcontractor, but they all contain the same substantive language: that New "shall not engage in judgment collection activities [from the Subcontractors or their owners] and … shall not attempt to execute and/or collect [any] judgment obtained through the Offer of Judgment … against" the Subcontractors or their owners.  (Doc. 6-1 at 5, 12, 19).  The Subcontractors' subsequent offers of judgment all provided that the offers were "subject to [New's] fulfillment of the terms and conditions set forth in" the Subcontractors' respective settlement agreements.  (Doc. 59-16 at 2; Doc. 59-18 at 2; Doc. 59-20 at 2).  Each of New's acceptances of the offers of judgment included the following statement:  "[New] shall satisfy the judgment solely from insurance proceeds from [the Policy] by using judgment creditor remedies available to [New] under the Alabama Code, § 27-23-2.  [New] shall not engage in judgment collection activities from any other sources related to the Defendants."  (Doc. 59-17 at 2; Doc. 59-19 at 2; Doc. 59-21 at 2).  The final judgment entered by the state court "[o]rdered" that each Subcontractor's allocation of the judgment

is $3 million, "payable exclusively from insurance proceeds that may be available to Plaintiff under the Alabama Code, § 27-23-1 et seq."  (Doc. 6-1 at 26).

The Policy provides in pertinent part that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages …."  (Doc. 59-1 at 76; *accord id*. at 108, 114).  The plaintiff argues that, due to the provisions quoted above, the Subcontractors were never legally obligated to pay damages to New and that, accordingly, the plaintiff has no obligation under the Policy to pay the judgment.  (Doc. 60 at 13-16).

The parties believe the question is already settled under Alabama law. According to the defendants, the answer is provided by *Liberty Mutual Insurance Co. v. Wheelwright Trucking Co*., 851 So. 2d 466 (Ala. 2002).  *Wheelwright*, however, was decided under Georgia law, not Alabama law.[4]  According to the plaintiff, the answer is provided by *Bendall v. White*, 511 F. Supp. 793 (N.D. Ala. 1981), and *Sharp Realty and Management, LLC v. Capitol Specialty Insurance Corp*., 2012 WL 2049817 (N.D. Ala. 2012).  State law, however, is established by state cases, not by federal cases; a federal court addressing an open question of state law "must predict how the highest court [of the state] would decide th[e] case."  *Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011).

"In the absence of definitive guidance from the [Alabama] Supreme Court, we follow relevant decisions of [Alabama's] intermediate appellate courts. … In the absence of precedents from [Alabama's] intermediate appellate courts, however, we may consider the case law of other jurisdictions that have examined similar policy provisions."  *State Farm Fire and Casualty Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004).

---

[4] The "legally obligated to pay" argument in *Wheelwright* was raised by defendant Gerling America Insurance Company ("Gerling"), one of four insurer defendants.  851 So. 2d at 469, 488.  The Alabama Supreme Court accepted the parties' "assumption that Alabama law governs the disposition of Liberty's appeal and that Georgia law governs the disposition of the appeals of the other insurers," including Gerling.  *Id*. at 475.

As noted, the plaintiff relies on *Bendall* and *Sharp*.  *Sharp* relied only on *Bendall*, 2012 WL 2049817 at *17-18,[5] and *Bendall*, 511 F. Supp. at 795, relied only on *Stubblefield v. St. Paul Fire and Marine Insurance Co*., 517 P.2d 262 (Ore. 1973).  The Oregon Supreme Court, however, has overruled *Stubblefield*, concluding that *Stubblefield* "erred when it concluded that a covenant not to execute obtained in exchange for an assignment of rights, by itself, effects a complete release that extinguishes an insured's liability and, by extension, the insurer's liability as well."  *Brownstone Homes Condominium Association v. Brownstone Forest Heights, LLC*, 363 P.3d 467, 480 (Ore. 2015).

The *Bendall* Court described *Stubblefield* as "a well-reasoned … decision," 511 F. Supp. at 795, but *Brownstone* characterized it as merely stating a "bare conclusion."  363 P.3d at 475.  "The court engaged in no examination of the wording of the policy, no consideration of its context, no determination whether the policy was ambiguous, and no discussion of what considerations weighed in favor of resolving any ambiguity one way or the other."  *Id*.  In addressing "the doctrinal question whether a covenant not to execute constitutes a release that, of its own force, extinguishes any further liability," the *Brownstone* Court noted that courts "almost uniformly" answer that question in the negative.  *Id*. at 476.  Other courts, including *Brownstone*, deem the undefined policy phrase, "legally obligated to pay," to be ambiguous and thus to be construed against the insurer. *Id*. at 476-77, 479.

It is unnecessary to develop a listing of all the jurisdictions that have rejected *Stubblefield*'s conclusion.  Based only on *Brownstone*, it is clear that the plaintiff, by its exclusive reliance on *Bendall* and *Sharp*, has failed to show the Alabama Supreme Court would likely rule that a covenant not to execute, of itself,

---

[5] *Sharp* was affirmed on appeal, but without consideration of the "legally obligated to pay" argument.  *Sharp Realty & Management, LLC v. Capitol Specialty Insurance Corp*., 503 Fed. Appx. 704 (11th Cir. 2013).

renders the insured not "legally obligated to pay" within the contemplation of an insurance policy.[6]

While focusing on the settlement agreements, the plaintiff also identifies the consent judgment as supporting its argument. (Doc. 60 at 2, 14, 15). The problem is that the plaintiff has constructed no argument to show that the Alabama Supreme Court would hold that a consent judgment parroting the language of a covenant not to execute renders the insured not legally obligated to pay under its policy.

## II. "Consent" Clause.

The Policy provides that "[n]o insured will, except at that insured's own cost, voluntarily … assume any obligation … without our consent." (Doc. 59-1 at 86; *accord id*. at 121). The plaintiff describes this as the "consent clause." The plaintiff argues that, under such a provision, a settlement between the insured and the injured party, entered without the insurer's consent, relieves the insurer of any obligation to pay the settlement amount. (Doc. 60 at 17-19). The plaintiff asserts that, because it did not consent to the settlement, it has no payment obligation here. The plaintiff argues further that, because the consent clause has not been

---

[6] The Court finds *Wheelwright* – which, again, was decided under Georgia law – more ambiguous than do the defendants. The trial court in *Wheelwright* ruled against the insurer on at least two grounds: (1) that numerous courts have held that a plaintiff's agreement not to collect a judgment against the insured "does not necessarily nullify insurance coverage"; and (2) that the consent judgment at issue resulted from the insured's filing of a bankruptcy petition. 851 So. 2d at 489-90. A third ground – that a "legally obligated to pay" provision cannot be enforced when the insurer fails to provide its insured with a defense – may or may not have been addressed by the trial court. *Id*. at 490. Without amplification, the Alabama Supreme Court "conclude[d] that the weight of authority favors the circuit court's analysis of this issue." *Id*.

It is thus open to interpretation which of these three grounds was or were approved by the appellate court. The Eleventh Circuit has indicated that *Wheelwright* rests on the third ground. *Twin City Fire Insurance Co. v. Ohio Casualty Insurance Co*., 480 F.3d 1254, 1260-61 (11th Cir 2007). Even if the Alabama Supreme Court approved the first ground (under Georgia law, but perhaps signaling how it would decide Alabama law), the scope of the "not necessarily" qualifier remains obscure.

satisfied, the Policy's "no-action" clause (which precludes suits against the plaintiff if policy conditions remain unsatisfied) bars the defendants' counterclaim for garnishment.  (*Id*. at 19 n.16 (citing Doc. 59-1 at 86, 123)).

The parties agree that, under Alabama law, there is an exception to the rule expressed in the preceding paragraph.  (Doc. 66 at 9; Doc. 67 at 4).  "In Alabama, when an insurer has a right to defend its insured, receives notice of settlement negotiations, and refuses to participate, the insurer waives the right to assert the no-action clause in a later suit to determine coverage."  *Twin City Fire Insurance Co. v. Ohio Casualty Insurance Co*., 480 F.3d 1254, 1258 (11th Cir. 2007).  The plaintiff concedes that this exception applies as much to the consent clause as to the no-action clause.  (Doc. 67 at 4).

According to the plaintiff, the exception does not apply under the following circumstances of this case.[7]  On April 22, New made a claim for Policy benefits.  (Doc. 59-3 at 5-7).  On May 17, the plaintiff, through its claims administrator, responded that the Policy provided no first-party coverage for New's losses, such that New was a claimant rather than an insured.  The plaintiff asked New to provide information regarding the decertification, the events giving rise to same, communications between New and the Subcontractors relating to New's claims, and documentation substantiating claimed damages.  (*Id*. at 9-10).  New did not provide any requested information or documents.  (Doc. 59-4 at 3).  New did file suit against the Subcontractors on May 30.  (Doc. 1 at 3).

On or about June 11, the plaintiff requested information from each Subcontractor, including regarding the underlying incidents.  (Doc. 59-5 at 14; Doc. 59-6 at 15-16; Doc. 59-7 at 18-19).  Between June 27 and July 2, the plaintiff notified the Subcontractors it would provide a defense under reservation of rights

---

[7] All dates are in 2019.

and repeated its request for information.  (Doc. 59-5 at 10, 14; Doc. 59-6 at 12, 15-16; Doc. 59-7 at 15, 18-19).[8]

The Subcontractors answered New's complaint on July 1 and 2.  (Doc. 60 at 7 n.8).  On July 8, New sent each Subcontractor an offer to settle for "policy limits" of $10,557,000 per Subcontractor.  (Doc. 59-5 at 19; Doc. 59-6 at 20; Doc. 59-7 at 24).  On July 17, the plaintiff wrote New's counsel, rejecting New's offer and setting forth the plaintiff's position that the policy limits were $1 million per incident.  The plaintiff advised New that it was still investigating coverage and that it could not respond to a demand before its investigation was completed.  The plaintiff also reiterated its request for the information mentioned in the May 17 letter.  (Doc. 59-3 at 12-13).  New provided no such information before settling with the Subcontractors.  (*Id*. at 3).

On July 2, one Subcontractor noticed New's deposition "at a date and time to be mutually agreed upon."  (Doc. 59-8 at 2-4).  On July 23, a second Subcontractor served written discovery requests on New.  (Docs. 59-9, 59-10).  On or about July 18, counsel for New informed the third Subcontractor he was working on providing a damages package.  (Doc. 59-11 at 2).  According to the plaintiff, none of this formal or informal discovery occurred prior to settlement.  (Doc. 60 at 7-8).[9]

On July 23 and July 24, New sent each of the Subcontractors its $3 million settlement proposal, with a July 26 or July 31 deadline for acceptance.  (Doc. 59-5 at 23-25; Doc. 59-6 at 29-31; Doc. 59-7 at 27-28).[10]  On July 26 and July 30, the

---

[8] The plaintiff identifies no evidence that the Subcontractors did not provide the requested information.  Although unnoted by the plaintiff, its submitted evidence confirms it received at least some of the requested information from at least two of the Subcontractors in June.  (Doc. 59-6 at 24; Doc. 59-7 at 11, 19).

[9] The plaintiff provides evidence of this as to the written discovery.  (Doc. 59-4 at 3).  It does not provide such evidence as to the deposition or the damages package.

[10] The timing as to one Subcontractor is unclear, but it appears this Subcontractor's deadline for response may have been July 24 rather than July 31.

plaintiff contacted each Subcontractor and acknowledged that, under Alabama law, the decision whether to settle is left to the insured.  However, the plaintiff advised the Subcontractors that it did not consent to the proposed settlement and would not be bound by its terms, with its position based on the information presently available and the failure to provide the plaintiff with evidence substantiating a judgment in the amount proposed.  (Doc. 59-13 at 2, 5; Doc. 59-14 at 2, 5; Doc. 59-15 at 2, 9).

The date of the Subcontractors' acceptance of New's settlement proposal is not stated, but settlement agreements were executed by the Subcontractors on August 6 and 7.  (Doc. 6-1 at 8, 14, 22).

The plaintiff first argues that the exception expressed in *Twin City* is confined to the factual circumstances there presented.  The plaintiff identifies those circumstances as "the provision of information necessary to evaluate the claim," coupled with a refusal to participate in settlement negotiations.  (Doc. 67 at 6-7).  It is true that the insured in *Twin City* provided medical reports to the insurer, 480 F.3d at 1257, but the Eleventh Circuit did not include the prior provision of information as an element of the exception.  Nor has the plaintiff attempted to demonstrate that the Alabama Supreme Court would add such a requirement to the exception as expressed by the Eleventh Circuit.

The plaintiff also argues that it "never refused to participate in settlement negotiations."  (Doc. 67 at 6).  The plaintiff's own argument, however, undermines its position.  The plaintiff identifies its July 17 letter to New, rejecting New's first settlement proposal, as "participat[ion] in settlement negotiations."  (*Id*. at 11).  When New presented a second settlement proposal a week later, however, the plaintiff made no response at all to New, instead confining its

communications to the Subcontractors.  If participation in settlement negotiations means, as the plaintiff suggests, a response to the injured party,[11] it becomes difficult to confirm that the plaintiff participated in such negotiations regarding the second proposal.

Without directly addressing this incongruity, the plaintiff notes that New had written the plaintiff on July 19 that, because the plaintiff's defense under a reservation of rights made the Subcontractors the ultimate decisionmakers regarding settlement, New "is dealing directly with the named Defendants and their respective attorneys in our settlement discussions."  (Doc. 59-5 at 23).  To the uncertain extent the plaintiff intends to suggest that this stance excused the plaintiff from responding to New regarding its second settlement proposal, (Doc. 67 at 7-8), it has not shown that its position is, or is likely to become, Alabama law.

That, ultimately, is the fatal weakness in the plaintiff's motion.  Rather than attempting to persuade the Court, by resort to case law from Alabama and/or elsewhere, or by cogent extrapolation from established principles, that the Alabama Supreme Court would likely uphold the plaintiff's invocation of the consent clause under existing law or an alteration thereto, the plaintiff instead simply sets forth circumstances that it believes present a sympathetic case for its invocation.  The Court cannot, on the slender reed offered, resolve the legal issue favorably to the plaintiff.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is **denied**.

---

[11] The settlement negotiations in *Twin City* consisted of a mediation, 480 F.3d at 1257, which would necessarily include the insurer's communication with the injured party.

DONE and ORDERED this 19th day of January, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE