IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 19-0848-WS-M ) |
| NEW WAY OUT, CORPORATION, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for summary judgment. (Doc. 91).[1] The parties have filed briefs in support of their respective positions, (Docs. 91, 86, 88), the plaintiff has filed exhibits in support of its position, (Docs. 75, 77, 87), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the complaint, (Doc. 1), the defendants are a provider of residential services to special needs customers ("New") and three entities that subcontracted with New to provide such services ("the Subcontractors"). The plaintiff issued a policy ("the Policy") to New, under which the Subcontractors were also named insureds.[2] New performed services under contract with a state agency. In February 2019, New lost its certification from the state agency to

---

[1] The plaintiff filed its motion for summary judgment under seal. (Doc. 78). The Court agreed that certain portions of the motion were due to be screened from public view but ordered that a redacted, unsealed version of the motion be filed. (Doc. 89).

[2] The plaintiff disputes whether one of the Subcontractors is insured under the policy, but the instant motion does not require resolution of that issue.

provide such services due to three incidents of physical abuse, with each Subcontractor involved in one of the incidents. New filed suit ("the Suit") against the Subcontractors in state court, alleging that it lost its certification due to the Subcontractors' conduct. New asserted various claims against the Subcontractors and demanded indemnity for the damages it suffered as a result of its decertification.

According to the complaint, the plaintiff provided defense counsel to the Subcontractors under a reservation of rights. Shortly after the Subcontractors answered, New demanded $3 million from each to settle, to be accomplished by an offer of judgment in that amount and conditioned on New's agreement to pursue collection exclusively from Policy proceeds.[3] The Subcontractors made such offers of judgment, New accepted them, and final judgment was entered accordingly. The plaintiff did not at any time consent to the settlement.

The plaintiff seeks a declaration, on various grounds, that it is not liable to New for the final judgment entered in the Suit. The plaintiff presented two grounds in a previous motion for summary judgment, but the Court denied relief. (Doc. 68). With prior permission, the plaintiff now pursues this second motion for summary judgment, asserting additional grounds.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its

---

[3] The parties appear to disagree as to what policy limits are, but they are at least $1 million for each of the three incidents.

burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.

The Policy contains two forms: a commercial general liability ("CGL") form and a social services professional liability ("SSPL") form. The Court addresses each in turn.

**I. Commercial General Liability Form.**

The CGL form requires the plaintiff to "pay those sums that the insured becomes legally obligated to pay as damages *because of* 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 59-1 at 76 (emphasis added)).[4] The parties agree that damages sought *for* bodily injury (such as pain and suffering) constitute damages "because of" bodily injury. They disagree, however, as to whether the Suit sought damages for bodily injury.

The Complaint asserted four causes of action. Counts One and Two demanded judgment "in an amount deemed appropriate by the jury for … causing

---

[4] There is no suggestion by either side that property damage is at issue in this lawsuit. Accordingly, the Court focuses on bodily injury.

[New] to lose its certification status and professional services contracts with the ADMH." (Doc. 77-7 at 12; *accord* at 13). Count Three similarly demanded judgment "for loss of [New's] certification status and professional services contracts with the ADMH." (*Id*. at 14). Count Four similarly demanded judgment for the conduct "that caused [New] to lose its certification status and professional services contracts with the ADMH." (*Id*. at 16). It is plain from this language that New sought damages for economic loss and not for bodily injury.

The defendants insist it is a "gross misreading of the complaint" to suggest that New "sought recovery of economic loss in the underlying action." (Doc. 86 at 4). They stress that Counts Two (wantonness) and Four ("alleged murder") sought punitive damages in addition to compensatory damages. Those punitive damages, however, were not to punish the Subcontractors for injuring the customers but for causing New's economic loss. The defendants add that "the facts" and "the testimony provided in deposition" demonstrate that New did not seek economic damages. (Doc. 86 at 4). The defendants articulate no facts, and identify no deposition testimony, on which they rely for this proposition. Nor do they explain how material outside the Complaint could possibly alter the specific demand for damages contained therein.[5]

Damages that are not "for" bodily injury may still be damages "because of" bodily injury and thus within the Policy's coverage. The Policy provides that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (Doc. 59-1 at 76). It is uncontroverted that New did not seek

---

[5] The defendants posit that, by failing to "stop the [consent] judgment" before it was entered, the plaintiff "no longer has the right to state that New was only seeking economic damages." (Doc. 86 at 4). It is difficult to make sense of this unexplained assertion. To the uncertain extent they intend to suggest that an insurer loses the right to contest coverage by not acting to prevent a consent judgment from being entered, they cite no authority in support of that unlikely proposition, and the Court will not endeavor to supply the deficiency.

damages for caring for its injured customers, or for the loss of their services, or for their death.

The plaintiff asserts that the foregoing provision is exclusive, such that the economic damages sought by New from its decertification and loss of contracts cannot be damages "because of" bodily injury under the Policy. (Doc. 91 at 14-15). The defendants offer no argument to the contrary and, as noted above, the Court will not inject or support arguments not advanced by the parties themselves. Therefore, even though an argument could have been made that the term "include" is illustrative rather than exclusive,[6] or that it at least can reasonably be read in that manner so as to trigger the rule that ambiguous terms in an insurance policy are to be construed against the insurer,[7] because the defendants have elected to accept the plaintiff's construction, the Court does so as well.

Rather than challenge the plaintiff's argument regarding the scope of "because of 'bodily injury,'" the defendants insist that "bodily injury and/or property damage are not at issue." (Doc. 86 at 12). Instead, the defendants "argue that the policy covers the claims under three theories," none of which, they believe, requires that New have sought damages because of bodily injury. (*Id*. at 11).[8]

The defendants' first theory of coverage is that the Subcontractors agreed to indemnify New from any liability based on their negligence. The defendants describe this agreement as an "insured contract" for which the Policy "allows …

---

[6] *E.g., State Superintendent of Education v. Alabama Education Association*, 144 So. 3d 265, 276 n.13 (Ala. 2013).

[7] *E.g., Baldwin Mutual Insurance Co. v. Adair*, 181 So. 3d 1033, 1042-43 (Ala. 2014).

[8] As the defendants acknowledge, (Doc. 86 at 4), they bear the burden at trial of proving coverage. *E.g., Employers Mutual Casualty Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002). They are thus free to identify their theories of recovery and thereby render all other possible theories irrelevant at the summary judgment stage.

coverage." (Doc. 86 at 8, 11). The defendants have offered no evidence that such an agreement exists, much less the precise language of the agreement.[9] The Court is thus unable to confirm that any agreement between the Subcontractors and New satisfies the Policy definition of an "insured contract."[10] In any event, and as the plaintiff notes, (Doc. 88 at 8), the existence of an insured contract does not establish coverage but merely exempts the liability assumed under the insured contract from the CGL form's exclusion for damages for bodily injury that the insured is obligated to pay because it by contract assumed such liability. (Doc. 59-1 at 77). Thus, even if an insured contract is implicated, the defendants would still have to establish that New sued for damages because of bodily injury and, as addressed previously, they have accepted the plaintiff's position that they cannot do so.

The defendants' second theory of coverage is that New sued for "personal and advertising injury" for which the Policy provides coverage. (Doc. 86 at 11). The CGL form provides that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (Doc. 59-1 at 81). "Personal and advertising injury" is a defined term, and it is limited to injury arising out of certain specified "offenses," including without limitation false imprisonment, malicious prosecution, wrongful eviction, defamation, invasion of privacy, and copyright infringement. (*Id*. at 90, 102). As the plaintiff correctly observes, (Doc. 88 at 8-9), the Complaint alleged nothing even remotely implicating any of the covered offenses; the mere fact that the Complaint alleged damage to New's reputation

---

[9] The defendants say the Complaint alleged the indemnity obligation, (Doc. 86 at 11), but the only reference the Court can locate is the obscure allegation that New "was further indemnified by the contracts that [the Subcontractors] signed guaranteeing compliance with ADMH and Alabama state law compliance." (Doc. 77-7 at 11).

[10] "That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third person or organization." (Doc. 59-1 at 89).

7

does not, as the defendants appear to believe, mean that its reputation was sullied by defamation or any other covered offense.

The defendants' third and final theory of coverage is that "the underlying lawsuit was a third-party insurance claim. …. Under the indemnification agreement between New and the Subcontractor Defendants, bodily injury and/or property damage are not at issue. What is at issue is the liability Subcontractor Defendants assumed under the indemnification agreement." (Doc. 86 at 11-12). This appears to be nothing but a restatement of the first theory of coverage. To the uncertain extent the defendants suggest the indemnity agreement by some unexplained mechanism allows them to bypass all considerations of Policy language and limitations, the Court rejects the suggestion.

In short, the defendants are unable to establish coverage under the CGL form.

## II. Social Services Professional Liability Form.

This form provides that the plaintiff "will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as 'damages' because of a 'professional incident' to which this insurance applies." (Doc. 59-1 at 114). The plaintiff does not contest that the Suit involved a "professional incident," and it does not address the "because of" qualifier. Instead, the plaintiff argues that coverage is excluded. (Doc. 91 at 24-27).

"This insurance does not apply to … [a]ny claim arising out of or in any way related to actual, alleged or threatened sexual or physical abuse. This includes, but is not limited to claims arising out of or related to … physical assault or battery by another person(s) and any failure to prevent or report any of the acts described in this paragraph." (Doc. 59-1 at 114, 117).

The Complaint alleged that one customer sustained severe injuries to his brain and abdominal organs from which he later died, "result[ing] from a criminal act committed by" an employee of one Subcontractor. The Complaint alleged that

8

a second Subcontractor was cited by the state agency "for an incident of physical abuse [resulting in] a broken tooth and other injuries at the hands of an employee." The Complaint alleged that a customer of the third Subcontractor sustained physical injuries, including bruising and two swollen eyes, which the customer attributed to the Subcontractor's employee having "punched her three times and forcibly thr[own] her to the floor."  (Doc. 77-7 at 9).  The administrative materials submitted by the plaintiff confirm these allegations and provide further detail. (Doc. 75 at 15-20).

"Physical abuse" is not defined by the Policy, but the defendants wisely do not suggest that the horrific conduct described above could possibly fall outside the scope of that term.  The administrative materials confirm that the first two incidents of physical abuse occurred and that the third was alleged and not discounted by the agency.  (Doc. 75 at 15-20).  The administrative materials further reflect that the Subcontractors did not report these incidents and that the agency relied on these failures to report, along with the incidents of physical abuse themselves, in its decision to decertify New.  (*Id*. at 14, 16, 18-20, 26-28).

It is plain from the foregoing that coverage under the SSPL form is excluded.  The defendants offer no argument to the contrary.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is **granted**.  The parties are **ordered** to file an agreed proposed final judgment on or before **April 27, 2021**.

DONE and ORDERED this 20th day of April, 2021.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE